[Cite as *In re Name Change of A.P.W.*, 2022-Ohio-2017.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: The Name Change of: | : | |
| | | No. 21AP-431 |
| A.P.W., II, A Minor, | : | (Prob. No. 606219) |
| [K.R.K., | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on June 14, 2022

**On brief**: *K.R.K.*, pro se.

APPEAL from the Franklin County Probate Court

NELSON, J.

{¶ 1} Someone applying for a name change must "show reasonable and proper cause for changing the name * * *." R.C. 2717.09. "When deciding whether to permit a name change for a minor child * * *, the trial court must consider the best interest of the child in determining whether reasonable and proper cause has been established." *In re Willhite*, 85 Ohio St.3d 28 (1999), paragraph one of the syllabus (in reference to same formulation in previous iteration of Ohio name change statute).

{¶ 2} A.P.W., II is the son of mother K.R.K. and father A.T.W., who have a shared parenting agreement; the child has split his time between the two households. He was eight years old when his mother applied to the Franklin County Probate Court to have his name changed to "[P.] Gabriel [K.-W.]." *See* October 5, 2020 Application at 1.

{¶ 3} After a hearing, a magistrate found in a decision later adopted by the trial court that "changing the minor's surname to remove the [extraneous] roman numeral 'II' is in the best interest of the minor." April 8, 2021 Magistrate's Decision at 6 (noting parental agreement and that the child "had not been regularly using the roman numeral"

and further that "his name is not identical to any other family member's name, [and] thus [numeral] removal would not lead to confusion"), as ratified by August 16, 2021 Judgment Entry at 6-7.

{¶ 4} Excision of the roman numeral is not at issue here. Nor is adoption of the hyphenated surname, which the magistrate likewise found and the trial court agreed "is in the best interest of the minor." Magistrate's Decision at 6 (noting parental agreement and that adding the mother's last name to the father's in a hyphenated surname "will help [the child] to identify with both parents"); Judgment Entry at 6 ("[h]yphenated last names are an outcome favored by *Willhite* and will further the connection between the Minor and both parents"). And in her presentation to us, K.R.K. has dropped her request to insert "Gabriel" into the child's name. *Compare* Magistrate's Decision at 6 (child "has never used the name 'Gabriel,' and no testimony was provided to show that he had any preference for its use"; insertion could "cause confusion" for the child) and Judgment Entry at 7 (echoing Magistrate's Decision) *with* Appellant's Brief at 48 (now requesting in "CONC[LU]SION" that "the minor child's name be changed to [P. K.-W.]").

{¶ 5} At issue here is the trial court's adoption of the magistrate's recommendation against stripping "A." from the child's name (as modified to "A. P. K.-W."). K.R.K., in objecting to the Magistrate's Decision, did not file a copy of the hearing transcript or an affidavit of the evidence presented there, and so the trial court was left to accept as true the magistrate's findings of fact, to which it then applied the law in reaching its "best interest" conclusion. Judgment Entry at 2, 7, citing *Kormanik v. Haley*, 10th Dist. No. 12AP-18, 2012-Ohio-5975, ¶ 12 ("Absent a transcript or affidavit, the trial court must presume the validity of the magistrate's proceedings and the ensuing findings of fact unless the court holds further hearings. The trial court need only determine whether the magistrate's factual findings support the conclusions of law in the magistrate's decision") (citations omitted).

{¶ 6} "A." is a first name the child shares with his father. As gleaned by the trial court from the magistrate's account:

> [K.R.K.] testified that the Minor has gone by "[P.]" for his entire life and has never been called anything other than "[P.]" [K.R.K.] wants the Minor to have a strong name so that he can compete in society without having a name that is identified with a certain race.

> [A.T.W.] testified that the Minor has historically used "[P.]" as a nickname to reduce confusion with having two people named "[A.]" in the family. The Minor recently asked questions of [A.T.W.] that led to conversations about race and social justice movements, which led the Minor to more closely identify with his race and his father, and prompted hi[m] to begin using the name "[A.]" in addition to "[P.]."
>
> * * * *
>
> [A.T.W.] testified that he wanted to have his son named after him, so he chose the first name "[A.]," and [K.R.K.] chose the middle name "[P.]," so they agreed to the name "[A. P.]" at his birth.
>
> [K.R.K.] testified that the Minor's name has been causing disruption at school, due to anxiety he is feeling regarding the court name change proceedings.
>
> [A.T.W.] testified that the Minor's issues at school were isolated incidents, that he has historically gone by "[P.]" at school without any issue, and that he has recently voluntarily used both names "[A.]" and "[P.]" at school.
>
> [K.R.K.] will allow her son to go by either "[A.]" or "[P.]," but only if it is his choice which name to use. [K.R.K.] does not believe her son is voluntarily using "[A.]."
>
> [A.T.W.] does not have a preference as to whether his son goes by "[A.]" or "[P.]," and will use whichever name his son prefers.

Judgment Entry at 3-4.

{¶ 7} Understanding that "[t]he determination in this matter revolves around the best interest of the minor," and looking to multiple factors set forth by the Supreme Court of Ohio in *Willhite*, the magistrate had concluded that it was not in the child's best interest for the court to excise "[A.]" from his name. Magistrate's Decision at 5-6. The Magistrate's Decision found that: "While the minor has historically gone by the name '[P.],' he is familiar with his name '[A.],' and has recently reached an age in which it is meaningful for him to understand his name and identify with his father." *Id.* at 6.

{¶ 8} That seems to have been part of the reason K.R.K. objected to the Magistrate's Decision in the trial court. *See* April 9, 2021 Objection to Magistrate's Decision (expressing

both procedural objections and great dissatisfaction with [A.T.W.] as a former partner to her and as a father to the child).

{¶ 9} Overruling those objections and adopting the Magistrate's Decision to grant the application only in part, by changing the minor's name to "A. P. K.-W.," the trial court opined that removing "A." from the child's name "may have a negative effect on the Minor's relationship with [A.T.W.]. While a child does not need to bear the name of a parent to have a parent-child relationship, in this instance, the Minor understands that he shares a first name with his father and is old enough that the sudden removal of that connection may reasonably be expected to alter the Minor's relationship with [A.T.W.]." Judgment Entry at 6. "[K.R.K's] dissatisfaction with the name '[A. P.]' is not sufficient reason to grant the change of name," the trial court observed in concluding that dropping "A." was "not in the Minor's best interest." *Id.* at 7. "[T]he minor's name is hereby changed to [A. P. K.-W.]," the trial court ordered. *Id.*

{¶ 10} K.R.K. appeals from that judgment. Her brief to us is a pastiche of the Magistrate's Decision, her objections thereto, the trial court's decision, and argument against the result, intermixed with other procedural accounts. To any extent that K.R.K. seeks to base her appeal on claims regarding what was said at the hearing or particular procedural rulings made there, *see, e.g.,* Appellant's Brief at 30-31 ("Statement of Appealability"), she cannot prevail because she did not provide a transcript to the trial court. *Compare, e.g., Barksdale v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 16AP-297, 2017-Ohio-395, ¶ 17 ("without a transcript," appeals court "must presume that the findings of fact are correct and supported by the evidence"). And contrary to her suggestion, it was not the trial court's responsibility as a neutral tribunal to provide her with "prompt and proper guidance" in pursuing her objections. *Compare* Appellant's Brief at 36 *with, e.g., Isreal v. Franklin Cty. Commrs.,* 10th Dist. No. 20AP-51, 2021-Ohio-3824, ¶ 9, quoting *Rizzo-Lortz v. Erie Ins. Group,* 10th Dist. No. 17AP-623, 2019-Ohio-2133, ¶ 18 (" 'A litigant proceeding pro se can neither expect nor demand special treatment' ") (citations omitted). So while K.R.K. believes that the magistrate unfairly curtailed the hearing by "reduc[ing]" the time available to 40 minutes, Appellant's Brief at 37, we cannot on this record conclude that the magistrate's conduct can be equated with "failing to conduct a hearing," *compare id.* (capitalizations and emphasis from heading omitted).

{¶ 11} K.R.K. posits that: "I. 'The trial court abused its discretion in granting Applicant['s] * * * petition to change the minor's name by failing to conduct a hearing and failing to apply the best interest standard.' " Appellant's Brief at 37 (capitalizations adjusted and heading emphasis omitted). We take that to be her assignment of error. *See* App.R. 16(A)(3) (requiring "statement of the assignments of error presented for review"). As even K.R.K.'s contentions about what she perceives to have been faults in the hearing acknowledge, the magistrate did conduct a hearing. *See, e.g.*, Appellant's Brief at 3 (noting in Statement of Case, as apparently lifted from magistrate's decision, that "[t]his matter was heard on March 25, 2021, upon the Application for Change of Name of Minor filed October 5, 2020," and listing hearing "[a]ppearances" by K.R.K., A.T.W., and A.T.W.'s counsel, while also noting the presence of the child's Guardian ad Litem). Like the trial court, we are not in a position to gainsay the procedural regularity of the hearing absent a transcript in the record. *Compare Kormanik.* From the briefing and argument to us, however, we understand the brunt of K.R.K.'s assignment of error to be that "the trial court abused its discretion * * * by failing * * * to apply the best interest standard" in making its decision. Appellant's Brief at 37 (capitalizations adjusted and emphasis omitted).

{¶ 12} K.R.K. is correct to suggest not only that in determining whether reasonable and proper cause exists to change a minor's name, the trial court must look to "best interest of the child," but also that "[a] probate court's determination of whether a proposed name change should be granted will * * * be reversed [only] if it constitutes an abuse of discretion." *In re C.C.M.*, 10th Dist. No. 12AP-90, 2012-Ohio-5037, ¶ 5 (adding that an "abuse of discretion * * * 'implies that the court's attitude is unreasonable, arbitrary, or unconscionable' ") (citations omitted); *see also D.W. v. T.L.*, 134 Ohio St.3d 515, 2012-Ohio-5743, ¶ 10 ("When reviewing a trial court's decision determining that a child's name either should or should not be changed, a reviewing court may not substitute its own judgment for that of the trial court, but it must consider whether the trial court abused its discretion").

{¶ 13} Here, the trial court did not abuse its discretion in considering the *Willhite* "best interest" factors (as articulated by the Supreme Court in the context of a proposed surname change) to the extent applicable in determining whether K.R.K. had met her burden to show that the trial court should discard "A." as the child's official first name. *Compare Willhite* at paragraph two of the syllabus (trial court should consider factors

including the effect of the change on the child's parental relationships; the child's identification as part of a family unit; the length of time that the child has used the name; the preference of a sufficiently mature child; a parental failure to maintain contact and support; and any other relevant considerations, in addition to surname-specific questions involving the surname of the residential parent).

{¶ 14} K.R.K. appears to argue that leaving the child with his father's first name of "A." preserves no familial link because the child was not " 'named after' " his father in the sense of sharing the same full name and adding the suffix "Jr." Appellant's Brief at 39. But the trial court did not err in understanding that father and son currently share a first name. Moreover, K.R.K's suggestion that A.T.W. simply could have transferred the name "A" to his recently newborn son, *see id*. at 40, only further validates the trial court's concern about not wanting the proposed name change to "have a negative effect" on the relationship between the minor whose name is at issue here and his father, *see* Judgment Entry at 6. We are not convinced that stripping the father's name from an older child to bestow it on a younger one would be conducive to relations between the father and his older son.

{¶ 15}  To any extent that K.R.K. argues that dropping "A." as the child's first name will be in his best interest because it will help him avoid racist "stereotypes placed behind names," *see* Appellant's Brief at 44, we reject the argument.  K.R.K. offers no basis for her proposition, but in no event will we put ourselves or trial courts in the business of ratifying or giving sway to racial "stereotypes" or any sort of type-casting by group:  this court will neither presume nor accommodate such thinking. *Compare D.W*. at ¶ 22 (rejecting trial court's name change decision as "at least in part * * * improperly founded on gender-based conventions and stereotypes").  Nor do we have any basis on which to conclude that "P.," any more than "A.," conveys or is more neutral in respect to the "Native American Indian * * * and Cuban background" that appellant claims as her own in urging that the trial court's judgment be overturned.  *Compare* Appellant's Brief at 46.

{¶ 16} In other respects and in numerous regards, K.R.K.'s brief to us relies on asserted facts that are not buttressed by any evidence in the record.  She had the burden to show the trial court that removing "A." as the child's first name would be in his best interest, and the trial court did not abuse its discretion in finding that she failed to meet that burden. *Compare D.W*. at ¶ 10 ("When there is insufficient evidence as a matter of law that a name

change is in the best interest of the child, a trial court's judgment changing a child's surname must be reversed").

{¶ 17} On this record, the preferences of the child's mother, who shares parenting responsibilities with the child's father, are not controlling. What matters to the trial court in considering a name change application regarding a minor must be in the best interest of the child. Here, the trial court did not abuse its discretion by retaining the child's first name while agreeing to the hyphenated last name. We overrule K.R.K.'s single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

SADLER and JAMISON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____